IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SUELLEN LINDSEY**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:10-CV-1587-L** |
| | § | |
| **WALMART STORES, INC.** Individually | § | |
| and d/b/a Wal-Mart Supercenter Store #1216, | § | |
| **WALMART STORES TEXAS, LLC,** | § | |
| **WALMART TRS, LLC, WALMART** | § | |
| **REAL ESTATE BUSINESS TRUST,** | § | |
| **WALMART, and DORIS BROWNING**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Motion to Remand, filed September 13, 2010. After careful consideration of the motion, response, briefs, record, and applicable law, the court **denies** Plaintiff's Motion to Remand.[1]

**I.    Background**

Suellen Lindsey ("Plaintiff" or "Lindsey") originally filed this action on June 24, 2010, in the 116th Judicial District Court, Dallas County, Texas, against Walmart Stores, Inc. individually and d/b/a Walmart Supercenter Store #1216; Walmart Stores Texas, LLC; Walmart TRS, LLC; Walmart Real Estate Business Trust; Walmart (the "Wal-Mart Entities"); and Doris Browning ("Browning"), collectively, "Defendants." She contends that she was shopping for milk at Wal-Mart Store #1216 in Carrollton, Texas, when she slipped and fell on a liquid substance and was seriously injured and damaged as a result of the fall. Lindsey contends that Defendants maintained an

---

[1]Plaintiff did not file a reply brief to Defendants' response brief.

**Memorandum Opinion and Order - Page 1**

unreasonably dangerous condition that proximately caused her injuries and damages. She further contends that her injuries and disfigurement are permanent. Defendants, among other things, deny any negligence on their part, contend that Plaintiff was the cause of her injuries, contend that Plaintiff's injuries, if any, resulted from a new and independent cause, and contend that Plaintiff's injuries, if any, resulted from the actions of persons or entities over whom they have no control. Finally, Defendants contend that all Wal-Mart Entities are not proper parties to this action and that the correct entity is Wal-Mart Stores, L.L.C.

On August 13, 2010, Defendants removed this action to federal court on the bases that diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000, exclusive of interest and costs. Defendants also contend that the citizenship of Browning, a Texas citizen, should be ignored for diversity purposes because she was improperly joined by Plaintiff to defeat this court's jurisdiction. Plaintiff contends that the court should remand this action to state court because it does not involve a federal question and the parties are not diverse. Lindsey also contends that she did not improperly join Browning as a party to this litigation.

## II. Subject Matter Jurisdiction

### A. Federal Question and Diversity Jurisdiction

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Absent jurisdiction

conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking. *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)). A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *See Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

### B. Diversity

Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)), *cert. denied*, 541 U.S. 1073 (2004). In considering citizenship, however, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). "[T]he basis on which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 n.2 (5th Cir. 1983)). Failure to allege adequately the basis of

diversity "mandates remand or dismissal of the action." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991).

A natural person is considered a citizen of the state where that person is domiciled, that is, where the person has a fixed residence with the intent to remain there indefinitely. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985). A partnership or unincorporated association's citizenship is determined by the citizenship of each of its partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). The citizenship of a limited liability company "is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). A corporation is a "citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). The citizenship of a trustee who possesses "customary powers to hold, manage, and dispose of assets for the benefit of others" is determined by the citizenship of the trustee, not the trust beneficiaries. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 464-66 (1980) (footnote omitted). Control of the assets held in the name of the trustee must be "real and substantial." *Id.* at 465. A national bank, for diversity purposes, "is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006).

Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance*, 134 F.3d at 1253. Accordingly, if a case is removed to federal court, the defendant has the burden of establishing subject matter jurisdiction; if a case is initially filed in

federal court, the burden rests with the plaintiff to establish that the case raises a federal question, or that diversity exists and that the amount in controversy exceeds the jurisdictional threshold.

### III. Improper Joinder Standard

A party seeking to remove an action to federal court on the basis of fraudulent or improper joinder bears a heavy burden. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 992 (2005). In *Smallwood*, the court "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred." *Id*. at 572. Accordingly, the court uses the term "improper joinder" in this opinion. As the party wishing to invoke federal jurisdiction by alleging improper joinder, Defendants must establish that Browning was joined by Lindsey to defeat diversity of citizenship and therefore subject matter jurisdiction.

To establish improper joinder, Defendants must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since Defendants do not assert fraud by Plaintiff, the test for improper joinder is "whether the defendant[s] ha[ve] demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).

In addressing this issue, the district court must determine whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust*, 313 F.3d at 312 (internal quotations and citations omitted). "This possibility, however, must be reasonable, not merely theoretical." *Id*. If there is a reasonable possibility that Plaintiff can recover on her claims against Browning, the case must be remanded. In making this determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted).

In deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant"; or (2) in limited circumstances, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. "When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the petition for removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990).

## IV. Discussion

### A. Diversity of Citizenship[2]

The court, upon reviewing the record, papers of the parties, and applicable law, as previously set forth, is convinced that the parties to this litigation are diverse, except for Lindsey and Browning. Both are citizens of the State of Texas. None of the Wal-Mart Entities is a citizen of the State of Texas. If Browning were improperly joined, the court must disregard her citizenship and retain jurisdiction of this case. On the other hand, if she were properly joined, the court must remand this action to the 116th Judicial District Court, as it would lack subject matter jurisdiction to hear the action. The court now addresses the issue of improper joinder.

### B. Improper Joinder

#### 1. Contentions of the Parties

The issue of improper joinder turns on whether there is a reasonable basis for this court to predict that Lindsey might be able to recover against Browning, the in-state defendant. Lindsey contends that Texas law recognizes a cause of action against Browning. Defendants contend that Texas law does not. The court agrees with Defendants.

---

[2]Although Plaintiff contends that no federal question exists, this issue is not in dispute, as Defendants have never asserted that this action arises "under the Constitution, laws , or treaties of the United States." Further, the amount-in-controversy requirement is not at issue. Plaintiff does not contest the amount in controversy in her motion to remand; it is not a basis on which she seeks remand of this case. Moreover, Plaintiff seeks past and future medical expenses, past loss of earnings, past and future loss of earning capacity, past and future physical pain and suffering, past and future mental anguish, past and future physical impairment, past and future physical disfigurement, and exemplary damages. Accordingly, given the nature and character of the injuries that Plaintiff has alleged and the damages that she seeks, a common-sense analysis and approach establish that the amount in controversy likely exceeds $75,000. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995). As these two matters are not at issue, the court declines to address them further.

**Memorandum Opinion and Order - Page 7**

## 2. Analysis

To address fully the issue of improper joinder and to establish the precise nature of Plaintiff's claims and allegations (many of which are quite repetitious) made against Defendants, the court sets forth the entirety of her allegations. She alleges:

. . .

> On or about July 24, 2008, Plaintiff, **SUELLEN LINDSEY**, was . . . shopping for milk [at] Defendants' WAL-MART store known as Wal-Mart Supercenter Store #1216 in Carrollton, Texas[,] owned and/or operated by **WAL-MART STORES, INC., Individually and d/b/a Wal-Mart Supercenter Store #1216 and WAL-MART STORES TEXAS, L.L.C., WAL-MART TRS, LLC, WAL-MART REAL ESTATE BUSINESS TRUST, WAL-MART** and **DORIS BROWNING**, (hereinafter referred to as "Defendants" or "Wal-Mart"), and while unaware of any foreign substance on the Defendants' floor therein, was caused to sustain serious injuries and damages when she slipped in what she later learned to be liquid that was on the floor. At all times relevant hereto, Plaintiff, **SUELLEN LINDSEY**, was exercising reasonable care for her own safety and well being and was unaware of the spill. The spilled liquid posed an unreasonable risk of harm to persons similarly situated. Defendants actually knew and/or reasonably should have known of the dangerous conditions, hazard, risk and danger caused by the presence of Wal-Mart's liquid located on the retail floor area of the store but nevertheless failed to exercise reasonable and ordinary care, adequately warn and make the condition reasonably safe. Additionally, Wal-Mart failed to follow rules, regulations and policies to prevent, eliminate and remove the hazard and further failed to properly alert, guard and protect the Plaintiff from the hazard. What[']s more, Wal-Mart consciously and deliberately employed a marketing strategy to attract customers' attention to goods on display. This consequently focused customers' attention away from unexpected dangerous conditions on walkways. Thereby Wal-Mart actually increased the likelihood that this unexpected dangerous condition would not be discovered by **SUELLEN LINDSEY**. Further, this display was not guarded by Wal-Mart employees even though Wal-Mart knows that these displays constantly allow liquid to be present on the floor. This condition also constituted a nuisance in the store.

Defendants, referred to herein as **WAL-MART**[,] were store owners, occupiers, and/or retail merchants in charge and responsible, or[,] alternatively, had the right to control, manage, inspect, clean and/or maintain a safe environment for Wal-Mart shoppers at this location for business invitees such as Plaintiff, **SUELLEN LINDSEY**. Defendants owed to **SUELLEN LINDSEY** the duty to keep the premises safe for invitees against known conditions that posed unreasonable risk of harm. As a proximate result of Defendants' negligence and/or gross negligence, Plaintiff, **SUELLEN LINDSEY**, received injuries to her left knee and body generally from which she has not recovered and which are permanently incapacitating and life altering in nature. Defendants' negligence and/or gross negligence is a proximate cause of Plaintiff's injuries[,] and damages are within the jurisdictional limits of this Court.

## 6.
## CLAIMS FOR RELIEF

On the occasion in question, Defendants, **WAL-MART STORES, INC., Individually and d/b/a Wal-Mart Supercenter Store #1216, WAL-MART STORES TEXAS, L.L.C., WAL-MART TRS, LLC, WAL-MART REAL ESTATE BUSINESS TRUST, WAL-MART** and **DORIS BROWNING** were acting in various capacities[,] including vice-principals, managers, representatives, agents, associates, ventures in concert, and/or as servants as those terms are generally understood in law and were negligent and/or grossly negligent which was a proximate cause of the injuries and damages to **SUELLEN LINDSEY**.

## 7.
## NEGLIGENCE AND GROSS NEGLIGENCE

. . .

The negligence and gross negligence, as those terms are understood in law, of the Defendants proximately caused physical harm, injuries and damages to the Plaintiff which is permanent, life altering and continuing in nature as more fully set forth herein.

In particular, it is believed that Defendants acting individually and together as one of the world's largest and most sophisticated marketers, as the owner and/or occupier, manager and marketer of the premises[,] failed to exercise that degree of care possessed and/or retained that would be used by an owner and/or occupier and/or

marketer of ordinary prudence and additionally failed and breached its own individual rules and standards of conduct, either singularly or in combination, in at least the following particulars:

1. In failing to provide safe and hazard [-] free place to shop;

2. In creating the unsafe condition in the shopping area of the Wal-Mart Supercenter #1216;

3. In failing to stand guard to protect customers from the existing hazard;

4. In failing to alert shoppers of the existence of the hazard which posed an unreasonable risk of harm;

5. In failing to guard the shopping public from the hazard, risk and danger;

6. In failing to maintain an adequate number of trained employees to either guard and/or eliminate the existing hazard, risk and danger to Wal-Mart shoppers;

7. In failing to either have in place or enforce proper safety procedures to assure that shoppers could leave the store in the same good health as when they entered;

8. In failing to warn, inform, alert, advise or instruct Plaintiff, **SUELLEN LINDSEY**, in an effective and meaningful manner as to the existence of and/or the means by which to avoid the risk and unexpected hazard and dangerous condition created or allowed to exist by the Defendants;

9. In failing to maintain and keep a reasonably safe premises and breaching Wal-Mart's express representation and/or its implied representation that its Wal-Mart[]s are safe and hazard free places for families to shop;

10. In leaving the liquid unattended and/or not properly barricaded in order that persons such as Plaintiff,

        **SUELLEN LINDSEY**[,] could perceive, recognize and/or avoid the hazard;

11. In failing to warn and/or adequately warn that an unreasonably dangerous condition existed as required by Texas law;

12. In failing to neutralize the dangerous condition, or to make that condition reasonably safe for Wal-Mart shoppers;

13. In failing to have a reasonably safe and hazard[-]free shopping and workplace;

14. In failing to exercise ordinary care to keep the condition of the premises in a reasonably safe condition;

15. Failing to properly exercise their retained right of control;

16. By having flooring with an unsafe coefficient of friction for potential spills in the subject location;

17. In committing various and other acts and omissions[,] which will be proven at the trial of this case[] and plead[ed] more specifically after Plaintiff has had a reasonable opportunity for discovery;

18. Failing to provide and administer a consumer shopping safety system which would effectively prevent unreasonable risks of serious or life-threatening personal injuries for shoppers; and

19. In breaching its commitment and representation to provide a consumer shopping safety system which would fulfill the Defendants' duty to keep the premises safe for invitees against known conditions that pose unreasonable risks of harm.

    Wal-Mart Supercenter Store #1216 Manager, **DORIS BROWNING**[,] was negligent and failed in the following particulars:

1. Failing to timely warn or alert Plaintiff, **SUELLEN LINDSEY,** of the impending hazard, risk and danger of the Wal-Mart spilled liquid on the floor;

2. In failing to maintain warning signs or other means available on the premises and/or[,] alternatively, failing to use said warning means and/or failing to properly place said warning to adequately warn persons such as Plaintiff, **SUELLEN LINDSEY**, coming from all directions, including utilizing the store's sound system, surveillance system, store personnel as standing guards, signs, and similar feasible means and methods to alert and inform shoppers of the hazard, risk and danger present;

3. In failing to inspect and/or adequately inspect the condition of the premises;

4. Failing to properly and/or adequately supervise;

5. Failing to take proper precautions necessary to avoid exposing persons such as Plaintiff, **SUELLEN LINDSEY**, to hazardous conditions and an unreasonable risk of harm on the premises;

6. Failing to properly guard the spill and to take proper precautions in a reasonable period of time as was necessary to avoid exposing Plaintiff, **SUELLEN LINDSEY**, to a risk of serious physical injury while on the Defendants' premises;

7. Failing to make the condition of the liquid reasonably safe for persons on Defendants' premises such as Plaintiff, **SUELLEN LINDSEY**;

8. Failing to timely eliminate the unsafe and hazardous condition of the liquid;

Additionally, your Plaintiff would show that the action and/or inactions of the Defendants as alleged hereinabove, whether taken separately or together, would have such a character as to indicate that they were the result of the conscious indifference and willfulness of the Defendants to the rights, welfare and safety of your Plaintiff. Therefore, Defendants are guilty of gross negligence for which they

should be held liable in punitive and exemplary damages to your Plaintiff in an amount as found sufficient by the trier-of-fact.

## 8.
## BREACH OF WARRANTIES

. . .

Defendants breached their express and implied representations that include but are not limited to representation[s] that they:

1. Were an exemplar worldwide retailer maintaining an establishment free of unreasonable conditions, hazards, risks, dangers and occurrences, and that their stores were safe for all shoppers[,] including families such as Plaintiff's;

2. Were providing quality as high as customers deserve and expect;

3. Were providing customer satisfaction;

4. Possessed and provided a passion for the well-being of customers;

5. Possessed a sense of urgency in all responsibilities to customers;

6. Practiced servant leadership whereby managers are not behind a desk but are out on the floor with associates right alongside of them; and

7. Provided a positive impact to the lives of their customers.

These breaches singularly and collectively were a producing and/or proximate cause of Plaintiff's injuries and damages.

Pl.'s. Original Pet. 4-10.

One thing is unequivocally clear from Plaintiff's pleadings and the record: Plaintiff sued Browning because she was the manager of the Wal-Mart Store at the time Plaintiff slipped and fell.

In *Leitch v. Hornsby*, 935 S.W.2d 114 (Tex. 1996), the Texas Supreme Court explained when liability could be imposed on a corporate agent, officer or employee acting in the course and scope of his or her employment. The court stated: "[I]ndividual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Id.* at 117 (citations omitted). While *Leitch* was a case in which an employee sued his employer and two corporate officers for failure to provide a safe workplace, the Texas Supreme Court in *Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005), extended *Leitch* to cover actions involving premises liability, which is precisely what exists here between Wal-Mart as the invitor and Plaintiff as the invitee. The only connection between Browning and the incident in question is that she was the store manager, and no amount of artful pleading, repetitious pleading, or use of legal legerdemain can alter this basic fact. Had Browning not been the store manager, she would not have been sued because no basis exists to show that she owed Lindsey any independent duty of care.

A close examination of Plaintiff's pleading reveals that she seeks to assert negligence against Browning and the Wal-Mart Entities under the same set of facts; and, as previously stated, Plaintiff's claim for negligence is based solely on Browning's actions or inactions because of her duties as the store manager within the course and scope of her employment. The duty or duties that Plaintiff contends were breached were those of Wal-Mart, and any breach by Browning would constitute a breach by Wal-Mart acting through its agent or employee. This is so because a corporate entity acts only through its employees, *Tri*, 162 S.W.3d at 562, and a corporate employee or agent's acts within the course and scope of employment are deemed to be corporate acts. *Leitch*, 935 S.W.2d at 118. The court has pored over Plaintiff's state pleadings, and no allegations establish, or even reasonably intimate, that Browning had an independent duty to Lindsey apart from the duty of Wal-Mart. The

court determines that there is no ambiguity in Texas law insofar as the facts pleaded in this case. As Browning did not owe Lindsey an independent duty of care apart from that of Wal-Mart, Lindsey has no reasonable possibility of recovery against Browning. Accordingly, Browning was improperly joined, and the court disregards the citizenship of Browning. Because the court disregards Browning's citizenship, complete diversity of citizenship exists between the parties, and the court has jurisdiction to entertain this action.

## V.     **Plaintiff's Other Arguments**

Plaintiff argues that the Eleventh Amendment to the United States Constitution guarantees her the right to select the forum she desires and to bring suit against another Texas citizen in state court. Simply stated, Plaintiff misconstrues the Eleventh Amendment. The case cited by Plaintiff, *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100 (1941), does not support her position. This case, in fact, acknowledges that Congress can legislate in this area as long as such legislation does not contravene Article III of the United States Constitution. *Id.* at 107. Congress has acted through the removal statute, 28 U.S.C. § 1441, to determine which cases may be removed to federal court. The court knows of no Supreme Court or Fifth Circuit authority, and Plaintiff has cited none, that even intimates that the removal statute is repugnant to the Eleventh Amendment. The court finds Plaintiff's argument wholly unavailing.

Plaintiff also argues that the removal by Defendants was in bad faith. In light of the court's ruling herein, this argument lacks merit. As the removal was appropriate, Plaintiff is not entitled to an award of attorney's fees and costs pursuant to 28 U.S.C. § 1447(c).

## VI. Conclusion

For the reasons herein stated, the court determines that Doris Browning was improperly joined to defeat this court's jurisdiction. Accordingly, the court **denies** Plaintiff's Motion to Remand. With respect to Defendants' suggestion that Browning should be dismissed from this action, the court **declines** to do so at this juncture. A request for dismissal is to be accomplished by a formal motion. Fed. R. Civ. P. 7(b)(1).

**It is so ordered** this 30th day of November, 2010.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge